UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BATAVIA WOODS LLC,           :     NO. 1:13-cv-00696
                             :
        Plaintiff,           :
                             :
    v.                       :     **OPINION AND ORDER**
                             :
JANE WAINRIGHT,              :
et al.,                      :
                             :
        Defendants.          :

This matter is before the Court on the Motion to Dismiss All Claims Against the State of Ohio Defendants (Ohio Civil Rights Commission, Sharon Griffin and Anthony Corona) (doc. 14), to which Plaintiff Batavia Woods LLC has filed a memorandum in response (doc. 26); on Plaintiff Batavia Woods LLC's Motion to Voluntarily Dismiss Pursuant to Fed. R. Civ. P. 41(a)(2) (doc. 25); and on the Joint Motion for Stay of Discovery by Plaintiff Batavia Woods LLC and Cross-Defendant Joyce McDowell and the State of Ohio Defendants (Ohio Civil Rights Commission, Sharon Griffin and Anthony Corona) (doc. 101).  Also before the Court is Plaintiff Batavia Woods LLC and Cross-Defendant Joyce McDowell's original Motion to Remand (doc. 24), which Defendants Joan Woods, Sharon Burson and Jane Wainright have opposed (doc. 54) and on Plaintiff Batavia Woods and Cross-Defendant

1

McDowell's renewed Motion to Remand (doc. 104).  As discussed below, we hereby GRANT the motion to dismiss filed by the State of Ohio Defendants, GRANT IN PART AND DENY IN PART the motion to voluntarily dismiss filed by Plaintiff Batavia Woods, DENY AS MOOT the joint motion for a stay of discovery and GRANT the motion to remand by Plaintiff Batavia Woods and Cross-Defendant McDowell.

**I. Background**

In July 2013, Batavia Woods LLC ("Batavia Woods") filed a Complaint for Forcible Entry and Detainer in the Clermont County Municipal Court (doc. 3) against Jane Wainright ("Wainright"), a tenant residing in one of its apartments located on Batavia Meadows Drive.  Wainright filed an answer (doc. 4) and brought four counterclaims against Batavia Woods:  (1) retaliation for helping a fellow tenant bring a sexual harassment claim in violation of the state and federal fair housing acts; (2) civil conspiracy to violate her fair housing rights; (3) retaliatory eviction in violation of O.R.C. § 5321.02; and (4) failure to maintain premises in violation of O.R.C. § 5321.04(A).  Wainright also joined Joyce McDowell ("McDowell"), an owner/property manager of Batavia Woods and Charles Gang ("Gang"), a tenant of one of the apartments on Batavia Meadows Drive and an alleged agent of McDowell's, to the suit and filed three crossclaims against them:  (1) retaliation for helping a

2

fellow tenant bring a sexual harassment claim in violation of the state and federal fair housing acts (identical to her first counterclaim against Batavia Woods); (2) negligent and/or intentional infliction of emotional distress under state common law; and (3) civil conspiracy to violate her fair housing rights (identical to her second counterclaim against Batavia Woods).

The facts alleged in support of the retaliation claim are that Wainright and another tenant, Sharon Burson ("Burson"), assisted a third tenant, Joan Woods ("Woods"), in seeking a civil protection order ("CPO") against Gang whom Woods claimed was sexually harassing her (doc. 4 ¶ 20). After an ex parte hearing, a temporary order was issued on August 24, 2012 by the Clermont County Common Pleas Court with instructions to its Clerk to effect personal service on Gang (id. ¶¶ 21, 22 & Exh. A). Later that same day, 30-day notices, signed by McDowell, were delivered to all three women (id. ¶ 23 & Exhs. B, C). The notice to Wainright stated, "landlord desires premises[]" (id. Exh. B). Wainright proceeded to testify as a witness for Woods (and against Gang) at the full hearing the following September 4, at which time the state court granted Woods' petition and issued a final protective order (id. ¶ 24). On September 10, 2012, McDowell delivered to Wainright a letter "nullify[ing]" the 30-day notice previously sent (id. ¶ 25 & Exh. D).

With the assistance of Housing Opportunities Made Equal ("H.O.M.E."), Wainright, Burson and Woods filed a complaint with the Ohio Civil Rights Commission ("OCRC"), alleging a violation of their fair housing rights (id. ¶ 26). A finding of "probable cause" issued on April 25, 2013 in favor of Wainright, Burson and Woods (id. ¶ 28 & Exh. F). Two days later, Wainright reported to the Clermont County Sheriff's office that another neighbor overheard Gang threaten her (id. ¶ 29 & Exh. G). On May 8, 2012, Wainright received a letter from Gang in which he asked her to stay away from his car, stop calling him names like "baby doll and sweetheart, sexy and ect [sic]" and not "grab me on the buttocks ever again" (id. ¶ 30 & Exh. H). Also on May 8 McDowell delivered a letter to Wainright stating that she had received "complaints by some of the tenants" and consequently was asking her to stop "hovering around [the] cars of other tenants[,]" "addressing [them] as baby doll, sweetie and using other comments of a sexual nature and grabbing their butt[,]" and "taking pictures of tenants . . . [because it was] making them feel very uncomfortable" (id. ¶ 31 & Exh. I). McDowell also admonished Wainright to immediately pick up her pet's waste after walking her dog on the common property (id.). Wainright denies all of the allegations made by Gang and McDowell in these two letters (id. ¶¶ 30, 31) and filed a second complaint against Gang with the OCRC the next day, May 9 (id. ¶ 32). The Court

4

presumes (but does not know whether) this second complaint is still under consideration.

In subsequent months, Wainright advised McDowell several times of "physical problems" with her apartment, with only some of them being addressed in the winter months of 2013 (id. ¶ 33). On May 14, 2013, Wainright delivered a letter to McDowell listing out repairs she thought necessary to her unit, indicating she would escrow her rent if action was not taken within thirty days (id. ¶ 34 & Exh. J). Wainright also complained to the Clermont County Buildings Department specifically about the issues that might lead to a mold problem (see id. ¶ 35 & Exh. K). An inspector noted, "drywall was loose from being water soaked at front sliding door and in bathroom next to vanity" in his summary but advised Wainright that these were maintenance issues that she needed to take up with her landlord (id. Exh. K). He "called and notified the owner[']s representative of the problems" and closed the file on May 31, 2013 (id.). The following June 4, McDowell gave Wainright a 30-day notice to vacate, advising this time that the "[l]andlord desires premises to make necessary repairs" (id. ¶ 36 & Exh. L). When contacted by a representative of H.O.M.E., McDowell indicated that Wainright would have to vacate because no other apartments were available for temporary housing while the necessary repairs were being made (id. ¶ 37). Wainright

5

contends that the repairs would not have required her to vacate her unit, that there were at least two other vacant units at time in question and that no repairs have occurred (id. ¶¶ 38, 39). She initiated rent escrow with the Clermont County Clerk of Court on June 24 and filed a second complaint against McDowell with the OCRC on June 28, 2013 (id. ¶¶ 40, 41). The Court presumes (but, again, does not know whether) this second complaint against McDowell, like the second complaint filed against Gang, is still under consideration.

Because Wainwright's counterclaims and crossclaims exceeded the jurisdictional limit of the municipal court, the action was removed to the Clermont County Common Pleas Court (see doc. 4 at 1). Batavia Woods then filed an Amended Complaint (doc. 7) asserting numerous causes of action against Wainwright[1] and these additional parties: Burson[2]; Woods[3]; H.O.M.E.[4]; Latonya Springs[5],

---

[1] Forcible Entry and Detainer; Violation of O.R.C. § 5321.05(A)(8) (disturbing neighbors' peaceful enjoyment); Violation of O.R.C. § 5321.05(B) (refusal to allow landlord to enter to make necessary and agreed repairs); Negligence; Breach of Contract; Malicious Use of Process; Abuse of Process; Defamation; and Civil Conspiracy.

[2] Violations of O.R.C. § 5321.05(A)(1) (failure to keep premises safe and sanitary), O.R.C. § 5321.05(A)(2) (failure to dispose of waste properly), O.R.C. § 5321.05(A)(3) (failure to keep plumbing fixtures clean), O.R.C. § 5321.05(A)(4) (improper use of electrical and plumbing fixtures), O.R.C. § 5321.05(A)(5) (failure to comply with state and local codes binding on tenants), O.R.C. § 5321.05(A)(6) (intentional or negligent destruction of property), O.R.C. § 5321.05(A)(7) (failure to maintain appliances supplied by landlord as required by rental agreement), and O.R.C. § 5321.05(A)(8) (disturbing neighbors'

6

a client services specialist for H.O.M.E.; the OCRC[6]; Sharon Griffin[7], a housing investigator for the OCRC; and Anthony Corona[8], a conciliator for the OCRC.  Thereafter, Defendants OCRC, Griffin and Corona removed this action to the Southern District with the consent of all the other Defendants (doc. 2). Defendants Burson and Woods have asserted four counterclaims against Batavia Woods, McDowell and Gang, three of which allege violations of the state and federal fair housing acts[9], with the

---

peaceful enjoyment); Negligence; Breach of Contract; Defamation; Malicious Use of Process; Abuse of Process; and Civil Conspiracy.

[3] Negligence; Breach of Contract; Abuse of Process; Malicious Use of Process; Defamation; Civil Conspiracy; and Violation of O.R.C. § 5321.05(A)(8) (disturbing neighbors' peaceful enjoyment).

[4] Negligence; Abuse of Process; Malicious Use of Process; Civil Conspiracy; 42 U.S.C. § 1983 (equal protection); and Conspiracy to Interfere with Civil Rights.

[5] Negligence; Abuse of Process; Malicious Use of Process; Civil Conspiracy; 42 U.S.C. § 1983 (equal protection); and Conspiracy to Interfere with Civil Rights.

[6] Negligence; Abuse of Process; Malicious Use of Process; Civil Conspiracy; 42 U.S.C. § 1983 (equal protection); and Conspiracy to Interfere with Civil Rights.

[7] Negligence; Abuse of Process; Malicious Use of Process; Civil Conspiracy; 42 U.S.C. § 1983 (equal protection); and Conspiracy to Interfere with Civil Rights.

[8] Negligence; Abuse of Process; Malicious Use of Process; Civil Conspiracy; 42 U.S.C. § 1983 (equal protection); and Conspiracy to Interfere with Civil Rights.

[9] Count I alleges that Woods was subjected to different terms and conditions of residency compared to similarly situated male tenants based on the alleged harassment of her based on her gender and that both Burson and Woods were subjected to differing terms and conditions of residency, specifically eviction (either outright or constructive), in retaliation for their opposition to the gender discrimination against Woods (violations of O.R.C. § 4112.02(H)(4) and 42 U.S.C. § 3604(b));

fourth grounded on the state common law theory of negligent and/or intentional infliction of emotional distress (doc. 10). Defendant Wainwright has reasserted her counterclaims against Plaintiff Batavia Woods and her crossclaims against Cross-Defendants McDowell and Gang, adding a fifth counterclaim for negligent and/or intentional infliction of emotional distress and a fourth crossclaim against McDowell for retaliatory eviction (doc. 15). Cross-Defendant Gang, appearing <u>pro</u> <u>se</u>, has filed an unspecified "counter claim" against Defendants Wainwright, Burson and Woods (doc. 23). Defendant H.O.M.E. has filed a counterclaim against Plaintiff Batavia Woods and Cross-Defendants McDowell and Gang for the expenses it incurred in defending Wainright, Burson and Woods in the proceedings commenced in response to the retaliatory 30-day notices received by them as well as any other damages allowed under the state and federal fair housing acts (doc. 35).

---

Count II alleges interference such that both Burson and Woods were prevented from the full exercise of their housing rights by virtue of their evictions (either outright or constructive) in retaliation for their opposition to the gender discrimination against Woods (violations of O.R.C. § 4112.02(H)(12) and 42 U.S.C. § 3617); and Count III alleges that rental units were unavailable to both Burson and Woods by virtue of their evictions (either outright or constructive) because of their gender or in retaliation for their opposition to the gender discrimination against Woods (violations of O.R.C. § 4112.02(H)(1),(2) and 42 U.S.C. § 3604(a),(d)).

In addition to the three motions described above, pending before the Court are nine other motions to dismiss[10] brought under Fed. R. Civ. P. 12(b)(6), four motions to amend[11] under Fed. R. Civ. P. 15(a), a motion to bifurcate[12] under Fed. R. Civ. P. 42(b), and a motion to extend discovery deadlines[13].

---

[10] Motion to Dismiss by Plaintiff Batavia Woods and Cross-Defendant McDowell (filed originally in Clermont County Common Pleas Court) (doc. 5); Motion to Dismiss by Defendants Burson and Woods (filed originally in Clermont County Common Pleas Court) (doc. 8); Motion to Dismiss by Defendant Wainright (doc. 13); Motion to Dismiss by pro se Cross-Defendant Gang (doc. 29); Motion to Dismiss (counterclaims and crossclaims of Defendants Burson and Woods) by Plaintiff Batavia Woods and Cross-Defendant McDowell (doc. 30); Motion to Dismiss (counterclaims and crossclaims of Defendant Wainright) by Plaintiff Batavia Woods and Cross-Defendant McDowell (doc. 34); Motion to Dismiss (counterclaims of Cross-Defendant Gang) by Defendants Burson and Woods (doc. 37); Motion to Dismiss (counterclaims of Cross-Defendant Gang) by Defendant Wainwright (docs. 50, 61); and Motion to Dismiss (counterclaim of Defendant H.O.M.E.) by Plaintiff Batavia Woods and Cross-Defendant McDowell (doc. 58).

[11] Motion to Amend First Amended Complaint by Plaintiff Batavia Woods and Cross-Defendant McDowell (doc. 48); Motion to Amend Counterclaims by Defendants Burson and Woods (doc. 57); Motion to Amend Counterclaims by Defendant H.O.M.E. (doc. 69); and a second Motion to Amend Counterclaims by Defendants Burson and Woods combined with a Motion to Join Lynne Gauthier and Brandi Roy as Counterclaim Plaintiffs (doc. 105).

[12] Motion to Bifurcate Trials by Plaintiff Batavia Woods (doc. 33).

[13] "Consent" Motion to Extend Discovery Deadlines (set forth in Joint Discovery Plan (Rule 26(f) Report) (doc. 47)) by Defendants Burson and Woods (doc. 95), to which counsel for all parties have agreed, Cross-Defendant Gang, appearing pro se and not conducting discovery, not consulted.

II. **State of Ohio Defendants' Motion to Dismiss and Plaintiff Batavia Woods' Motion to Voluntarily Dismiss Under Fed. R. Civ. P. 41(a)(2), as well as the Joint Motion to Stay Discovery**

Pursuant to Fed. R. Civ. P. 12(b)(1), the State of Ohio Defendants have moved to dismiss both the federal and state claims brought against them on the basis that this Court lacks subject matter jurisdiction. By way of review, the six counts alleged against both Griffin and Corona are identical to the six alleged against the OCRC (cf. doc. 7 §§ 141-163 with §§ 164-186 with §§ 187-209 and see nn. 6-8, supra). Two of the six reference federal constitutional principles (42 U.S.C. § 1983 (equal protection violation) and Conspiracy to Interfere with Civil Rights (no statutory citation[14])),[15] with the other four sounding in state common law (Negligence, Abuse of Process, Malicious Use of Process and Civil Conspiracy)[16]. Beginning first with the federal claims, we quote below the relevant portion of Section 1983:

---

[14] As Defendants correctly point out, the appropriate statutory citation is to 42 U.S.C. § 1985(3). Moss v. Columbus Bd. of Educ., 98 Fed. App'x 393, 396 (6th Cir. 2004) ("Section 1985 prohibits conspiracies to interfere with civil rights[.]").

[15] Fortieth and Forty-First Causes of Action (OCRC); Forty-Eighth and Forty-Ninth Causes of Action (Griffin); and Fifty-Fourth and Fifty-Fifth Causes of Action (Corona).

[16] Thirty-Sixth through Thirty-Ninth Causes of Action (OCRC); Forty-Second, Forty-Fifth through Forty-Seventh Causes of Action (no Forty-Third or Forty-Forth Causes of Action) (Griffin); and Fiftieth through Fifty-Third Causes of Action (Corona).

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State . . . subjects,
> or causes to be subjected, any citizen of the United States
> . . . to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983 (emphasis added).  Defendants argue that the
OCRC, as an agency of the State, is not a "person" within the
meaning of Section 1983 (or Section 1985(3)[17]) and thus cannot be
sued thereunder.  Will v. Mich. Dep't of State Police, 491 U.S.
58, 65-66 (1989).  They contend further that Griffin and Corona
have been sued in their official capacities only, and thus,
they, too, are immune from suit.  Id. at 71 ("We hold that
neither a State nor its officials acting in their official
capacities are 'persons' under § 1983.") (emphasis added).  On
this basis, then, Defendants maintain that the federal causes of
action brought against them must be dismissed.

---

[17] In relevant part, 42 U.S.C. § 1985(3) reads:  "If two or more
persons in any State . . . conspire . . . for the purpose of
depriving, either directly or indirectly, any person or class of
persons of the equal protection of the laws[] . . . of the
United States; . . . in any case of conspiracy set forth in this
section, if one or more persons engaged therein do, or cause to
be done, any act in furtherance of the object of such
conspiracy, whereby another is injured in his person or property,
or deprived of having and exercising any right or privilege of a
citizen of the United States, the party so injured or deprived
may have an action for the recovery of damages occasioned by
such injury or deprivation, against any one or more of the
conspirators" (emphasis added).

Defendants' position regarding the state claims brought against them is equally straightforward.  The torts alleged by Batavia Woods all seek monetary damages.  It is well-established that the Ohio Court of Claims has exclusive jurisdiction over such claims brought against a state agency like the OCRC.  <u>See</u> O.R.C. § 2743.02(A)(1); <u>Measles v. Indus. Comm'n of Ohio</u>, 128 Ohio St. 3d 458, 2011-Ohio-1523, 946 N.E.2d 204, at ¶ 7 ("The Court of Claims . . . has exclusive jurisdiction over civil actions against the state for money damages that sound in law. R.C. 2743.02 and 2743.03. Included within the jurisdiction of the Court of Claims are civil actions presenting claims in both law and equity.  R.C. 2743.03(A)(2)." (citing <u>Ohio Hosp. Ass'n v. Ohio Dep't of Human Servs.</u>, 62 Ohio St. 3d 97, 103, 579 N.E.2d 695, 699-700 (1991))).  Further, state employees are immune from civil actions grounded in state law "unless the . . . employee's actions were manifestly outside the scope of his [or her] employment or official responsibilities, or unless the . . . employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner. . . ."  O.R.C. § 9.86.  Whether a state employee loses his or her immunity is a decision committed to the Court of Claims, which "has exclusive, original jurisdiction to determine, initially, whether the . . . employee is entitled to personal immunity under section 9.86 of the Revised Code . . . ."  <u>Id</u>. § 2743.02(F); <u>Johns v. Univ. of</u>

<u>Cincinnati Med. Assocs.</u>, 101 Ohio St. 3d 234, 2004-Ohio-824, 804 N.E.2d 19, at ¶ 30 ("Therefore, we hold that under R.C. 2743.02(F), the Court of Claims is the <u>only</u> court with authority to determine whether a state employee is immune from personal liability under R.C. 9.86.") (emphasis added). Thus, even if Griffin and Corona had been sued in their personal capacities, whether they are immune is an issue that can be resolved solely in the Court of Claims, and therefore this Court is without jurisdiction to proceed.

Regarding the federal causes of action pled, Batavia Woods responds simply that it "disagree[s]" that the State of Ohio Defendants are not "persons" under Section 1983, but argues that, in any event, its claims should be dismissed (without prejudice) because they are not yet ripe for consideration. As to the state causes of action, Batavia Woods concedes that the Ohio Court of Claims has exclusive jurisdiction. Hence, Batavia Woods filed a Rule 41(a)(2) motion to voluntarily dismiss all federal and state claims against the State of Ohio Defendants as well as the federal claims (also brought under Sections 1983 and 1985(3)) against Defendants H.O.M.E. and its client services specialist, Latonya Springs.

Upon consideration, given the strength of the precedent supporting their position, the Court thinks it appropriate to GRANT the motion to dismiss filed by the State of Ohio

13

Defendants on the basis that we lack subject matter jurisdiction[18] and DENY AS MOOT that portion of Batavia Woods' motion to voluntarily dismiss as it relates to them. Also DENIED AS MOOT is the joint motion to stay discovery filed by Batavia Woods and McDowell and the State of Ohio Defendants. However, because it is unopposed, the Court GRANTS that portion of Batavia Woods' motion to voluntarily dismiss as it relates to Defendants H.O.M.E. and Springs.

### III. Plaintiff Batavia Woods and Cross-Defendant McDowell's Motion to Remand

On the same date it filed its response in opposition to the State of Ohio Defendants' motion to dismiss and its Rule 41(a)(2) motion to voluntarily dismiss, Plaintiff Batavia Woods, along with Cross-Defendant McDowell, also filed a motion to remand.[19] In support, they note that "more than 80 percent" of the causes of action pled in the Amended Complaint are grounded in state law, and remind the Court that Batavia Woods has moved to voluntarily dismiss all of its claims based on federal law (see doc. 24 at 4-5, 7). Further, in the event we would choose to deny their Rule 41(a)(2) motion, they nonetheless urge the

---

[18] Because we are granting the State of Ohio Defendants' motion under Rule 12(b)(1), we do not address their arguments in favor of, and Batavia Woods' response in opposition to, a dismissal under Rule 12(b)(6).

[19] Cross-Defendant Gang does not join in this motion, but counsel for Plaintiff Batavia Woods and Cross-Defendant McDowell represent that he does not oppose it (see doc. 24 at 1).

14

Court to decline to exercise supplemental jurisdiction because the state law claims predominate over the two "unique" federal claims.  28 U.S.C. § 1367(c)(2),  Finally, they highlight other reasons they consider "compelling" in this circumstance, all relating to pro se Cross-Defendant Gang, including his unfamiliarity with downtown Cincinnati (the site of the Potter Stewart Courthouse) and the lack of easy access thereto via public transportation, as well as Gang's inability to secure representation and his personal "struggle" with the "sophisticated" practice in federal court, all placing in serious jeopardy the "pinnacles of due process" owed to him (see doc. 24 at 6-7).  28 U.S.C. §1367(c)(4).  In contrast, they claim, Gang is quite familiar with Batavia (the site of the Clermont County Court of Common Pleas), living "right down the street" from the courthouse, and, apparently in the opinion of counsel for Batavia Woods and Cross-Defendant McDowell, better able to handle the more basic proceedings likely to occur in state court.  None of these contentions, however, are supported by affidavit.

Defendants Wainright, Burson and Woods oppose the motion to remand, arguing that Batavia Woods is forum shopping and has manipulated the process by virtue of filing its Rule 41(a)(2) motion, which they charge is based "upon events [that] have not even happened yet[,]" including resolution of the pending

complaints filed against Gang and McDowell with the OCRC and whether the Ohio Attorney General will file a complaint in state court in connection with the finding of probable cause issued on April 25, 2013. Yet these events were known at the time of removal, and so they deem Batavia Woods' "sudden" concern to be "contrived" (doc. 54 at 3). Wainright, Burson and Woods also maintain that counsel for Batavia Woods and McDowell have engaged in "significant legal activity" on behalf of their clients in this forum, such as entering their appearances (docs. 19-22), participating in a Rule 26(f) conference (the very same day they filed the original motion to remand), and filing "robust" motions to dismiss the counterclaims of Burson and Woods (doc. 30) and the counterclaims and crossclaims of Wainright (doc. 34), as well as a motion to bifurcate (doc. 33), a motion to amend their Amended Complaint (doc. 48) and other motions relating to discovery (e.g., doc. 70). Given this backdrop, Wainright, Burson and Woods urge that Batavia Woods has waived any right to seek a remand.

The Court is not impressed with the contention that Batavia Woods and McDowell are forum shopping. We observe that this case was removed to federal court by counsel for the State of Ohio Defendants, albeit with the consent of counsel for Wainright, Burson and Woods (see doc. 2). Prior to removal, Wainright had filed an answer to Batavia Woods' complaint and

16

asserted counterclaims against Batavia Woods and crossclaims against McDowell (and Gang), a clear indication she thought state court an appropriate forum in which to litigate her federal fair housing retaliation causes of action. In fact, as part of her pursuit for redress, she sought removal from the Clermont County Municipal Court to its Court of Common Pleas (see doc. 4 at 1).

Nor are we persuaded that the timeline of events supports a theory of "waiver." Removal to the Southern District occurred on September 27, 2013 (see doc. 2). Counsel for Batavia Woods and McDowell entered their appearances on October 11, 2013 (see docs. 19-22) and filed their motion to remand one week later on October 18, 2013 (see doc. 24), with no pleadings filed by them in the interim. In all, less than a month elapsed between removal and the instant motion. The case law cited by Wainright, Burson and Woods to the effect that "vigorously" prosecuting a case amounts to waiver simply is not apposite here. For example, in Koehnen v. Herald Fire Ins. Co., remand was sought after a party received an unfavorable decision. 89 F.3d 525, 528 (8th Cir. 1996). Here, however, this Court has yet to hand down a dispositive ruling. And in St. Louis Home Insulators v. Burroughs Corp., the parties actually presented evidence to a jury before a mistrial was declared after three days of testimony. 597 F. Supp. 98, 99-100 (E.D. Mo. 1984). Even the

17

fact pattern in Harris v. Edward Hyman Co. is not analogous considering that the party seeking remand there engaged in discovery before filing a motion to remand, whereas, here, Batavia Woods and McDowell have done so after filing same (and during its pendency). 664 F.2d 943, 944-46 (5th Cir. 1981).

On balance, the Court believes remand is indicated. The heart of this dispute is whether Batavia Woods may properly evict Wainright. Under Ohio law, forcible entry and detainer proceedings are designed to be summary in nature. Miele v. Ribovich (2000), 90 Ohio St. 3d 439, 441, 739 N.E.2d 333, 335 ("A forcible entry and detainer action is intended to serve as an expedited mechanism by which an aggrieved landlord may recover possession of real property." (citing Cuyahoga Metro. Hous. Auth. v. Jackson (1981), 67 Ohio St. 2d 129, 131, 423 N.E.2d 177, 179)); Steadman v. Nelson, 155 Ohio App. 3d 282, 287-88, 800 N.E.2d 775, 779 (Ohio Ct. App. 2003). Moreover, as authorized by Chapter 1923, it is a proceeding by which "'any judge of a county court' may make inquiry into disputes between landlords and tenants, and, where appropriate, order restitution of the premises to the landlord." Miele, supra, 90 Ohio St. 3d at 441, 739 N.E.2d at 335 (quoting Jackson, supra, 67 Ohio St. 2d at 131, 423 N.E.2d at 179) (emphasis added). Indeed, the current version of the statute prescribes, "any judge of a county or municipal court or a court of common pleas[] may

inquire[,]" thus reinforcing the notion that a federal court ought not be involved.  See O.R.C. § 1923.01(A)(emphasis added).

Also at the heart of this dispute is whether the current eviction proceedings against Wainright are, as well as the 30-day notices issued to Wainright, Burson and Woods on August 24, 2012, were, retaliatory.  The counterclaims and crossclaims filed to this end are brought pursuant to federal and state statutes that mirror each other.  Moreover, this Court adheres to the "well-established" legal principle of "the equal dignity of the state and federal courts."[20]  See Dargis v. Sheahan, 526 F.3d 981, 990 (7th Cir. 2008) (citing Tafflin v. Levitt, 493 U.S. 455, 458 (1990) (state courts have concurrent jurisdiction over the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968).  Just as a county court of common pleas can preside over lawsuits brought pursuant to the Ohio fair housing statutes, so, too, can it preside over matters grounded on ones brought under Title VIII.  And if these reasons were not enough, attached to the pleading through which Batavia Woods and McDowell renew their motion to remand is the Civil Complaint finally filed by the Ohio Attorney General in the Clermont County Court of Common Pleas on February 11, 2014 on behalf of

---

[20] We reject the inference that counsel for Batavia Woods and McDowell wish us to draw to the effect that Cross-Defendant Gang somehow will fare better in state rather than federal court, its physical proximity notwithstanding, because the proceedings there will be less complex.

19

the OCRC against Batavia Woods, Joyce McDowell (and Terry McDowell), and Charles Gang (doc. 104, Exh. 1).  The facts alleged within said complaint duplicate those brought before this Court by virtue of the September 27, 2013 removal. Accordingly, we decline to exercise supplemental jurisdiction over the causes of action that remain post our grant of the State of Ohio Defendants' motion to dismiss and that portion of Batavia Woods' Rule 41(a)(2) motion as it relates to Defendants H.O.M.E. and Springs.  The motion to remand filed by Batavia Woods and McDowell, therefore, is thus GRANTED.

## IV.  Conclusion

In sum, the Court GRANTS the Motion to Dismiss All Claims Against the State of Ohio Defendants (doc. 14) (Thirty-Sixth through Fifty-Fifth Causes of Action are hereby DISMISSED, with the Court noting the absence of a Forty-Third or Forty-Fourth Cause of Action brought against any Defendant); DENIES AS MOOT that portion of Plaintiff Batavia Woods' Motion to Voluntarily Dismiss (doc. 25) as it relates to the State of Ohio Defendants but GRANTS that portion of it as it relates to Defendants H.O.M.E. and Latonya Springs (Twenty-Eighth, Twenty-Ninth, Thirty-Fourth (labeled in error as "Twenty-Fourth" but falling sequentially between the Thirty-Third and Thirty-Sixth Causes of Action) and Thirty-Fifth Causes of Action are hereby DISMISSED); DENIES AS MOOT the Joint Motion to Stay Discovery (doc. 101)

20

between Plaintiff Batavia Woods and Cross-Defendant McDowell and the State of Ohio Defendants; and GRANTS Plaintiff Batavia Woods and Cross-Defendant McDowell's Motion to Remand (as filed originally (doc. 24) and as renewed (doc. 104)) and thus REMANDS the remainder of this case to the Clermont County Court of Common Pleas.

      SO ORDERED.


Dated:  February 24, 2014   s/S. Arthur Spiegel_____
                                   S. Arthur Spiegel
                                   United States Senior District Judge